## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LEONARD GRAY, *et al.*                    :
                                          :
                                          :
     v.                    :     Civil No. CCB-10-3000
                                          :
                                          :
THE WALT DISNEY COMPANY, *et al.*         :
                                          :
                                          :

## MEMORANDUM

     The plaintiffs, former employees of the ESPN Zone restaurant at the Baltimore Inner Harbor, have brought this action against defendants The Walt Disney Company and its subsidiary, Zone Enterprises, alleging that, as their employers, the defendants violated the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101 *et seq.*, when the restaurant was shuttered. The defendants have filed  a motion for summary judgment and the plaintiffs have filed a cross motion for partial summary judgment. Oral argument was heard on November 30, 2012. For the reasons set forth below, each motion will be granted in part and denied in part.

## BACKGROUND

     The ESPN Zone was a restaurant and amusement facility in the Inner Harbor that opened in 1998 and closed on June 16, 2010. During its entire operation, defendant Zone Enterprises of Maryland LLC was its operator. Zone Enterprises is a subsidiary of defendant The Walt Disney Company. Plaintiffs Leonard Gray, Lee Evans, and Debra Harris were members of the restaurant's kitchen staff at the time it was closed. Plaintiff Krystal Payton was a hostess. As full-time employees, Mr. Evans and Mr. Gray were entitled to, among other benefits, coverage under

the Disney Severance Pay Plan, while part-time employees like Ms. Payton and Ms. Harris were not.

On June 9, 2010, Disney publicly announced that it was closing five ESPN Zone restaurants the following week, including the Inner Harbor location. The decision to close the restaurant had been communicated to some corporate-level staff on March 26, 2010.  The plaintiffs were orally informed of the closing by their managers on June 9. On June 16, the plaintiffs were told when they arrived for work that the restaurant was closed and that they were being put on leave. They were informed in written separation agreements that "they would remain employed for the next 60 days[,] . . . they did not have to show up for work[,] and their employment would terminate on August 15, 2010." (Defs.' Mem., ECF No. 56-1, at 8.)

The written materials they received also informed the plaintiffs that, "[f]or the next 60 days," they would each receive "a regular weekly paycheck . . . based upon the weekly average of [their] total hours paid . . . for the 6-month period prior to the notification." (*See, e.g.*, Pls.' Ex. 3-A, Harris Separation Summary, ECF No. 58-7.) For non-severance eligible employees, this was referred to as a "notice period." (*Id.*) For full-time severance-eligible employees, this was called their "[s]everance [p]eriod." (*See, e.g.*, Pls.' Ex. 1-A, Gray Severance Summary, ECF No. 58-3.) For employees already eligible for severance pay, the written notices also informed them that their severance would be reduced by the pay they received over this period, and that they would receive any outstanding severance in a lump sum at the end of the notice period. (*Id.*) The court will refer to the pay that each plaintiff received over this 60-day period as "Notice Pay."

The WARN Act, 29 U.S.C. § 2101 *et seq.*, provides that an employer may not order "a plant closing . . . until the end of a 60-day period after the employer serves written notice of such an order" on each affected employee. § 2102(a). For each day less than the 60-days' notice

2

required by the Act, an employer owes each affected employee back pay "for each day of violation at a rate of compensation not less than the higher of . . . the average regular rate received by such employee during the last 3 years of the employee's employment; or . . . the final regular rate received by such employee." § 2104(a)(1).

In October 2010, shortly after the end of their Notice Pay, the plaintiffs filed this action. They claim that because they did not receive 60 days written notice before the ESPN Zone restaurant closed, they are owed back pay pursuant to § 2104, and that the Notice Pay they were given was insufficient to compensate them under the Act. (Compl. ¶ 48.) The plaintiffs intend to seek class certification on this claim for all similarly situated former ESPN Zone employees. (*Id.* ¶¶ 32-41.)

## ANALYSIS

I.     Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club*,

*Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The court must "view the facts and draw reasonable inferences 'in the light most favorable to the

party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007)

(alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the

court also must abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778–

79 (4th Cir. 1993) (internal quotation marks omitted).

"When both parties file motions for summary judgment, the court applies the same

standards of review." *Loginter S.A. Y Parque Indus. Agua Profunda S.A. Ute v. M/V NOBILITY*,

177 F. Supp. 2d 411, 414 (D. Md. 2001) (citing *Taft Broad. Co. v. United States*, 929 F.2d 240,

248 (6th Cir. 1991)). "The role of the court is to 'rule on each party's motion on an individual

and separate basis, determining, in each case, whether a judgment may be entered in accordance

with the Rule 56 standard.'" *Id.* (quoting *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.*,

627 F. Supp. 170, 172 (D. Md. 1985)).

II.     WARN Liability

The parties do not disagree on most of the material facts. Their cross-motions revolve

around the same central legal dispute: whether the failure of the defendants to give any notice

before their plant closing constituted a violation of the WARN Act. The defendants argue that no

WARN violation occurred because the plaintiffs remained "employed" by the defendants for the

60-day period between receiving notice of the closing and their actual "employment loss." They

argue that, for the 60-day period after the restaurant closed, the plaintiffs were merely on paid

leave and, thus, they had adequate notice before they officially lost their jobs as required by

WARN. The defendants rely almost entirely on *Long v. Dunlop Sports Group Am., Inc.* which

held that where an employer continues to provide "full wages and benefits," as if its employees were actually still working for 60 days after a plant closing, employees have not suffered an unanticipated "employment loss" and are entitled to no damages under WARN. 506 F.3d 299, 300, 303 (4th Cir. 2007).

In *Long*, however, the employees did not dispute that they were paid "full" wages and benefits during the 60-day period after the plant closing. *Id.* at 300 ("full wages and benefits"), 303 ("all benefits and wages").[1] The employees' claim in *Long* was, regardless of such pay and benefits, that the right protected by WARN is an expectation of "labor," *not* an expectation of wages or benefits. *Id.* at 303. ("[N]othing in the Act suggests that Congress sought to protect an individual's ability to continue performing labor during the 60-day period, as the [e]mployees contend."). Thus, *Long* stands only for the proposition that where an employer "continues to pay its employees *full* wages and benefits[,]" the employees do not face an unanticipated "employment loss" under the WARN Act until the cessation of such wages and benefits. *Id.* at 302.  So, for the purposes of WARN liability, employment "'termination' does not *necessarily* occur when the employer ceases production." *Id.* at 303 ("The ordinary meaning of 'employment termination' does not encompass a situation in which an employer continues to pay its employees *full* wages and benefits.") (emphasis added). In the present case, however, the plaintiffs are not seeking a vindication of the right to have actually worked for 60-days after the ESPN Zone closed, they are only seeking their full, expected wages for that period. Here, the plaintiffs had no warning that they were going to be put on "leave" and lose significant pay and

---

[1] The plaintiffs and factual circumstances of *Long* are substantially different from the present case: the claim in *Long* was brought by twenty-two employees of the defendant's successor company who alleged they were owed full wages and benefits from *both* the defendant and the successor during the 60-day WARN notice period. *See* 506 F.3d at 301.

severance benefits. So, even under *Long*, the plaintiffs did suffer an "employment loss" on the day the plant closed.

The defendants offer no evidence disputing the plaintiffs' showing that they were not paid "full" wages equivalent to what they would have made if they continued to work for the 60 days following the closing of the ESPN Zone.[2] The plaintiffs were hourly workers and the Notice Pay they received did not match their full expected summer earnings. (*See* Pls.' Mem., ECF No. 58-1, at 16-18.) The defendants merely assert that the amount of Notice Pay the plaintiffs received is "immaterial, " that the plaintiffs' evidence shows that "each [p]laintiff received payments during the administrative leave period well in excess of what they would have received if their hours had been reduced by half," and that the plaintiffs' evidence that their expected earnings for the 60-day period were higher than their Notice Pay is "speculative." The defendants argue that they made a "good faith effort" to calculate satisfactory pay in lieu of notice, but WARN sanctions no such alternative. Neither the WARN Act nor *Long* suggest that employers are free to estimate sufficient wages in lieu of actual notice. WARN and *Long* require that employees continue to receive their full wages and benefits during a congressionally guaranteed "transition time to adjust to the prospective loss of employment." *See United Mine Workers of Am. v. Martinka Coal Co.*, 202 F.3d 717, 721 (4th Cir. 2000) (quoting 29 C.F.R. § 639.1(a)). The alternative scheme proposed by the defendants has no legal basis.[3]

_____

[2] To the extent that the defendants' eleventh hour filing of a "clarify[ing]" letter after oral argument (ECF No. 63) seeks to create a dispute regarding whether the plaintiffs were paid "full" wages equivalent to what they would have been paid had they actually worked during the notice period, that filing is both too late to be considered and insufficient to create a genuine dispute on this issue.

[3] *See also* Dep't of Labor, Employment & Training Admin., WARN Employer's Guide to Advance Notice of Closings and Layoffs, at 34 (2003), http://www.doleta.gov/layoff/pdf/employerwarn09_2003.pdf  ("Neither the Act nor the regulations recognize the concept of pay in lieu of notice. WARN requires notice, making no

Furthermore, the defendants attempted to offset employee severance benefits with Notice

Pay, so any employee owed severance did not receive their "full" expected benefits either. In

fact, as discussed more thoroughly below, by attempting to use a provision of the Disney

Severance Pay Plan that admits the restaurant gave "less than required" WARN notice, (*see*

Defs.' Ex. 5, Disney Severance Pay Plan, ECF No.16-9, at 7-8), the defendants engineered a

mechanism by which they attempted to avoid WARN liability *and* offset much of the cost of the

required 60-day notice period with severance already otherwise owed employees. Employers

should not be permitted to circumvent the WARN Act in this way.

The defendants also argue that they were not required to provide "full" pay for the 60-day

notice period because employees do not suffer an "employment loss" under WARN if a 50%

reduction of hours lasts less than six months. *See* § 2101(a)(6). Because WARN is implicated

only in the most severe, sustained wage reductions, they argue, WARN implicitly sanctions

substantial wage reductions that do not rise to this definition of "employment loss" and they

were free to both close the plant without notice and reduce the plaintiffs' pay by any amount for

the required two month notice period, since any two-month wage reduction would not in itself

constitute an "employment loss."

Allowing the defendants to use WARN's definition of  "employment loss" in this way

would seriously undermine enforcement of the Act. The six-month, 50% hour reduction

definition of "employment loss" was included in WARN to give employees additional notice

rights in some situations less severe than permanent plant closings. In this case, the plaintiffs

---

provision for any alternative. Failure to give notice does a significant disservice to workers and
undermines other services that are part of the purpose of the WARN Act. However, since
WARN provides that the maximum employer liability for damages, including backpay and
benefits, is for the period of violation up to 60 days, providing your employees with *full pay and
benefits* for the 60-day period effectively precludes any relief.") (emphasis added).

suffered a total employment loss resulting from a permanent plant closing. So, the court need not look to the other definitions of "employment loss" in WARN beyond a permanent plant closing; they do not apply to this case. The issue here, recognizing that WARN is implicated, is the amount of compensation the plaintiffs are owed because they suffered an unanticipated employment loss. The back pay damages sanctioned by § 2104(a)(1)(A) for violations of WARN, which provides that employees receive compensation "for each day of violation" at a rate the higher of their average regular rate for the past three years or their final rate, would be entirely written out of the law if employers were permitted to, alternatively, pay employees as little as 50% of their normal wages in place of 60 days notice.

If anything, the 50% hour reduction provision reinforces WARN's guarantee of notice before substantial employment changes. Even if it is plausible that substantial hour reductions are the result of sudden business necessities, compliance with WARN mandates as much transparency as possible, and notice is required as soon as employers are actually aware of the need to reduce hours by 50% for at least six months. As the Department of Labor explained in construing this provision when it promulgated regulations under the Act:

> When it becomes evident that [a reduction in hours] will extend beyond six months, WARN notice should be given . . . Of course, if the employer knows in advance that a reduction in hours of more than 50% will occur for each of 6 months, the rule requires that the employer give notice at least 60 days in advance of the beginning of the period or as soon as the duration of the reduction becomes clear.

Worker Readjustment and Retraining Notification, 54 Fed. Reg. 16,042-01, 16,049 (April 20, 1989) (codifying 20 C.F.R. pt. 639(f)). Here, the defendants knew they were permanently closing the restaurant at least as early as March 2010. (Pls.' Ex. 5, Florez Dep., ECF No. 58-10, at 23). Yet, they purposely failed to warn their employees until the day it closed. Neither the spirit nor the letter of the WARN Act authorizes the alternative scheme the defendants have put forth:

employers are not permitted to actually close a plant yet technically prevent their employees from suffering an "employment loss" under the Act until the 60-day clock has run by sending regular "paychecks" in whatever amount they choose over 50%. *Long* is unambiguous: only *full* pay—pay that replaces a 60-day continuation of employment following a plant closing—suffices in lieu of notice. 506 F.3d at 303 ("[P]aying all benefits and wages for 60 days without requiring work in exchange entirely accords with the language, purpose, and structure of the WARN Act.").

Because the plaintiffs did not receive full wages and benefits over the 60-day notice period, the defendants violated the WARN Act. *See Long*, 506 F.3d at 303 ("[I]n the WARN Act, Congress sought to protect employees' expectation of wages and benefits.").[4] Thus, on the issue of liability, the defendants' motion for summary judgment will be denied.

By arguing that they paid their employees "enough," but less than full, Notice Pay to escape any liability, the defendants put the cart before the horse. Once an employer has failed to either give adequate notice or has failed to continue to paying its employees full wages and benefits for 60 days after a closing, employees are entitled to prove back pay for all of the time they "would have worked" during the 60-day period. *See Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dept. Stores, Inc.*, 15 F.3d 1275, 1283-85 (5th Cir. 1994) ("[T]he Supreme Court has explained that 'back pay' suggests a remedy such that the damaged employee

---

[4] The defendants also erroneously charge that the plaintiffs must demonstrate, under *Long*, that they were "constructively discharged" prior to the end of the sixty-day "notice period" to prove that a WARN violation occurred. The constructive discharge issue in *Long* was an *alternative* argument advanced by the plaintiffs there because the claim involved employees who had voluntarily taken new employment during the sixty-day period in which they were receiving their full wages and benefits. *See* 506 F.3d at 303 ("*Alternatively*, the [plaintiffs] argue that they did not voluntarily depart the company, but rather [the defendant] constructively discharged them . . .") (emphasis added). The plaintiffs here do not claim they were "constructively discharged" and the issue has no bearing on whether paying employees less than their full expected wages for 60 days after a plant closing satisfies the requirements of the WARN Act.

is restored 'as nearly as possible, to that which would have [been] obtained but for the

[violation].'") (quoting *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 197 (1941)); *see also*

*Washington v. Aircap Indust., Inc.*, 860 F. Supp. 307, 312 (D.S.C. 1994). This back pay must be

calculated by the formula set out in the Act itself:

> [B]ack pay for each day of violation at a rate of compensation not less than the higher of . . . the average regular rate received by such employee during the last 3 years of the employee's employment; or . . . the final regular rate received by such employee . . .

§ 2104(a)(1)(A).

During the next phase of this litigation, the burden remains on the plaintiffs to prove that

what they were paid in lieu of notice was less than what they would have received under the

back-pay provision. Certainly, if, as the defendants now appear to suggest, some plaintiffs were

paid more under the defendants' formula than what they would have received under the WARN

back pay provision, those plaintiffs would be entitled to no additional back pay. But, WARN

requires an individualized determination, for each aggrieved employee, of the days they would

have worked during the notice period and what their higher rate of pay would have been (the

three-year "average regular" or "final regular" rate). *Id.*

Accordingly, the plaintiffs' motion for partial summary judgment will be granted on the

issue of liability: the plaintiffs are entitled to prove damages equal to the difference between

what they should have been paid under WARN's statutory measure of back pay and what the

plaintiffs received as Notice Pay under the written agreements they were given on June 16, 2010.

III.     Offsetting WARN Damages with Notice Pay

The plaintiffs also seek to prevent the defendants from counting *any* of the Notice Pay the

plaintiffs received against the damages they are owed. Here, the plaintiffs' motion for partial

summary judgment will be denied and the defendants' granted.

Section 2104(a)(2) of WARN provides:

> The amount for which an employer is liable . . .shall be reduced by . . . (A) any wages paid by the employer to the employee for the period of the violation; (B) any voluntary and unconditional payment by the employer to the employee that is not required by any legal obligation . . .

The plaintiffs argue that the Notice Pay they were given was neither "wages" nor "unconditional" and so cannot offset damages under this provision. This argument is unavailing.

First, the plaintiffs contend that the Notice Pay they received was not "wages" because, under the dictionary definition of wages, the payments were not "money for labor or services." (Pls.' Mem., ECF No. 58-1, at 25.) The defendants, however, are correct that, under the Act, the Notice Pay the defendants received was "wages" as it represented pay for work the plaintiffs "would have performed" had the restaurant not closed on June 16. *Cf. Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 151-52 (3d Cir. 1998) (distinguishing "wages" from "severance payments"). The defendants provided the Notice Pay as a proxy for the plaintiffs' potential wages over the 60-day period and to satisfy no other obligation. Thus, the Notice Pay is properly characterized as "wages" paid during the 60-day notice period and can offset the full amount of back pay damages the plaintiffs would otherwise  be owed under § 2104(a)(1)(A).

Second, as noted above, § 2104(a)(2)(B) of the Act also provides that "unconditional" payments to employees can offset damages they are owed under WARN. There is a factual dispute between the parties as to whether there were "conditions" placed on the Notice Pay, but, because the Notice Pay may offset the plaintiffs' damages as "wages" under § 2104(a)(2)(A), this dispute is immaterial.

IV.    Offsetting WARN Damages with Disney Severance Pay

Finally, those plaintiffs who qualified for severance pay under Disney's ERISA governed Severance Pay Plan, (Defs.' Ex. 5, ECF No. 56-9), argue that the defendants were wrong to

11

reduce the severance they were already owed under the Plan in the event of a layoff by the

Notice Pay they received. The plaintiffs contend that the severance owed under the Plan cannot

offset or be offset by pay in lieu of adequate WARN notice because severance benefits are not

"wages" under § 2104(a)(2)(A) and are not "voluntary" payments because they are already owed

under a "legal obligation." *See* § 2104(a)(2)(B). The plaintiffs are correct and will be granted

summary judgment on this issue. Preexisting ERISA severance benefits are not "wages" and

were legally owed to the plaintiffs in full for an involuntary layoff. *See, e.g., Ciarlante*, 143 F.3d

at 151-52; *see also* § 2104(a)(1)(B) (establishing that, in addition to back pay, employers are

liable for all benefits the employee would have received during the period of a WARN

violation).

The defendants point to Section 3(d) of the Disney Severance Pay Plan  that appears to

expressly contemplate the circumstances at issue in this lawsuit:

> If you become entitled to severance pay . . . on account of [a layoff] subject to WARN,
> then, to the extent you have been given less than WARN-required advance notice of the
> date your active services will actually terminate, you will be given a Paid Leave in Lieu
> of Notice for the balance of the WARN-required advance notice period. . . . When your
> Paid Leave in Lieu of Notice ends, you will then be entitled to severance pay [under the
> Plan] . . . , but the amount of severance pay otherwise payable will be reduced by the cash
> wages you received for your paid leave.

(Defs.' Ex. 5 at 7-8.) So, under the terms of the Plan, the defendants assert they were permitted

to reduce the severance owed any plaintiff by the amount of Notice Pay (or, as the Plan calls it,

"Paid Leave in Lieu of Notice") the plaintiffs were paid because they received inadequate

WARN notice. The defendants point out that employers are not legally obligated to provide

severance pay at all, so they argue that employers may limit severance benefits as they see fit,

including by offsetting severance with payments made during a 60-day WARN notice period in

lieu of required actual notice. In support of their position, the defendants rely almost entirely on *Braden v. LSI Logic Corp.*, 340 F. Supp. 2d 1066, 1073 (N.D. Cal. 2004).

The plaintiffs argue that it is unlawful to permit employers to draft severance plans that bypass the WARN Act. They suggest that it is the position of a majority of courts addressing the issue that WARN notice may not be offset by severance payments and that *Braden* is an outlier. Many courts have indeed held that ERISA-governed severance benefits may not offset inadequate notice under WARN because such benefits were already legally owed the employees; unlike in the present case or in *Braden*, however, the severance plans or agreements in these cases did not expressly address WARN. *See Castro v. Chicago Housing Auth.*, 360 F.3d 721, 734 (7th Cir. 2004); *Loc. Joint Exec. Trust Fund v. Las Vegas Sands*, 244 F.3d 1152, 1159-60 (9th Cir. 2001); *Ciarlante*, 143 F.3d at 151-52; *Tobin v. Ravenswood Aluminum Corp.*, 838 F. Supp. 262, 273 n.17 (S.D.W. Va. 1993). Only in *Braden* did the severance plan at issue, like the one here, contain a provision expressly referencing the WARN Act. *See* 340 F. Supp. 2d at 1070.

The defendants' reliance on *Braden*, however, is misplaced. The purpose of WARN is to provide employees a federally protected "make-whole compensatory remedy" in the specific event an employer has failed to give adequate notice of a plant closing. *See Braden*, 340 F. Supp. at 1072 (quoting *Las Vegas Sands*, 244 F.3d at 1159). Making an employee "whole" includes, as the Act itself requires, paying all benefits, including severance benefits, to which an employee is entitled. *See* § 2104(a)(1)(B). In *Braden*, the plaintiffs did not assert that their employer had violated the WARN Act itself because they received "sixty days written notice of their layoff" and they received "their regular pay and benefits" for the sixty day notice period. 340 F. Supp. 2d at 1073. The employees there claimed that a WARN violation occurred solely because their employer reduced the severance they were paid after their layoff by the pay they received during

the final sixty days of their employment. *Id.* The court in *Braden* determined that the language of the severance plan there could be construed to allow for offsetting of severance by wages paid in the final sixty days of employment. 340 F. Supp. 2d at 1075-76. The court specifically cautioned that a different provision, one that would allow employers to offset severance owed by payments required in the event of a WARN Act *violation*, might not be permissible: such a provision "would actually give [the employer] an incentive *not to comply* with the provisions of the WARN Act . . . it could realize savings under the [Severance Plan] by not paying duplicate benefits." *Id.* (emphasis in original)

Unlike the provision in *Braden*, such an offset is precisely what the Disney Severance Pay Plan seeks in this case. The Disney Plan admits that the "paid leave in lieu of notice" arrangement challenged by the plaintiffs is in fact a violation of the WARN notice requirement: "to the extent you have been given less than *WARN-required* advance notice of the date your active services will actually terminate, you will be given a Paid Leave in Lieu of Notice for the balance of the WARN-required advance notice period." (Defs.' Ex. 5 at 7-8.) (emphasis added). The defendants did not give the "required" advance notice, though they could have, and instead offered the inadequate Notice Pay described above. Thus, the defendants violated the WARN Act's requirements and now seek to invoke a provision of their severance plan that, in fact, encourages such a violation as a way of reducing severance owed to its employees. As the *Braden* court cautioned, the perverse incentives fostered by this provision should not be sanctioned; employers cannot craft benefits provisions that permit violations of federal law and that reduce their liability in the event of such violations. *Cf. J.I. Case Co. v. NLRB*, 321 U.S. 332, 337 (1944) (holding that "[w]herever private contracts conflict with" the rights afforded by the National Labor Relations Act, "they obviously must yield or the Act would be reduced to a

futility"). Accordingly, the defendants may not reduce the severance owed under the Disney Plan by the Notice Pay the plaintiffs received, and in addition to the difference between the Notice Pay and the required WARN back-pay, the plaintiffs are entitled to their full severance pay as a matter of law.

## CONCLUSION

For the above reasons, the defendants' motion for summary judgment and the plaintiffs' cross-motion for partial summary judgment are each granted in part and denied in part. Because the plaintiffs are entitled to WARN Act damages, a second phase of discovery and briefing related to class certification and damages may now commence. (*See* Scheduling Order, ECF No. 47.)

A separate order follows.


January 3, 2013                                         /s/
            Date                                Catherine C. Blake
                                                United States District Judge